JOSEPH BERMEL, Respondent, *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

*Bermel* v. *N. Y., N. H. & H. R. R. Co.*, 62 App. Div. 389, affirmed. (Argued October 22, 1902; decided November 18, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 17, 1901, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*George Coggill* and *Henry W. Taft* for appellant.

*J. Bohmbach* for respondent.

Judgment affirmed, with costs on opinion below.
Concur: PARKER, Ch. J., BARTLETT, MARTIN and VANN, JJ.; O'BRIEN, J., reads dissenting opinion, and GRAY, J., concurs; not voting, HAIGHT, J.

O'BRIEN, J. (dissenting). The plaintiff, residing and doing business in this state, purchased from a firm of dealers at Quincy Adams, in the state of Massachusetts, a granite monument of the actual value of one hundred and twenty-two dollars, to be shipped to him by the seller free on board the cars. The seller delivered the monument to the defendant to be transported to the plaintiff, and at the same time the consignor, that is, the firm that sold the monument, made out themselves the bill of lading under which the carrier was to transport the property. They filled out the blanks in the printed form, and with a rubber stamp kept by the firm for that purpose, they stamped upon or inserted in the contract with blue ink the following words: "6 Pcs. Box'd Granite Mon'm'ts, Owner's Risk Released. Valuation restricted to 40 cts. per cubic foot." These words were inserted in a blank left in the printed form for that purpose. The shippers knew that this clause inserted in the contract entitled them to a reduced rate of freight, and the property was carried by the defendant at such reduced rates. It is alleged in the complaint that the property while being transported by the defendant was so injured by a collision as to be worthless to the

plaintiff and a total loss, and that such collision and loss was the result of the defendant's negligence. The defendant does not deny these allegations, but insists that it is not liable for the loss beyond the value inserted in the bill of lading, which, it is conceded, amounts to only twenty-nine dollars.

The question, therefore, presented by the appeal is with respect to this limitation contained in the bill of lading upon the plaintiff's right of recovery. In other words, the question is whether he can recover the full value of the property or only the value named in the restriction inserted in the contract. It will be seen that the bill of lading was procured, not by the plaintiff, who was the consignee, but by the seller, who was the consignor. The consignor, in order to obtain the reduced rate of freight, deliberately and advisedly inserted the restriction in the bill of lading. There is no real question in the case as to any mistake, inadvertence or fraud in the insertion of this restriction in the contract. It was the deliberate act of the shipper in order to give him the benefit of a reduction in freight. The bill of lading, on its face, contained the following stipulation : " It is mutually agreed, in consideration of the rate of freight hereinafter named as to each carrier of all or any of said property over all or any portion of said route to destination as to each party at any time interested in all or any of said property that every service to be performed herein shall be subject to all the conditions whether printed or written hereon contained and which are hereby agreed to by the shipper and by him accepted for himself and his assigns as just and reasonable. * * * The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation."

The seller and consignor of goods, in the absence of proof to the contrary, has authority to make special contracts with the carrier as to the terms of shipment which will bind the consignee. The carrier is not bound to inquire as to the con-

signor's authority, but is entitled to assume that it exists. If the seller or consignor, acting for the consignee, exceeds his authority in consenting to limitations upon the carrier's liability, the carrier cannot be made to suffer thereby unless actual notice of such fact is brought home to him. Therefore, the clause inserted by the shipper in the bill of lading bound the plaintiff to whom the goods were consigned. (*Donovan* v. *Standard Oil Co.*, 155 N. Y. 112.)

It is now well settled that where a shipper of property enters into a contract with a common carrier whereby, in consideration of an agreement of the latter to transport the property at reduced rates, it is stipulated that in the event of loss or injury resulting from causes which would make the carrier liable the liability will be limited to an amount not exceeding a valuation specified, the shipper in case of loss or injury is not entitled to recover more than the sum specified, and that it is incumbent upon the shipper to acquaint himself with the contents of the contract executed by him, and in case he fails to do so he will be held chargeable with knowledge thereof. (*Magnin* v. *Dinsmore*, 70 N. Y. 410 ; *Hart* v. *Penn. R. R. Co.*, 112 U. S. 331 ; *Zimmer* v. *N. Y. C. & H. R. R. R. Co.*, 137 N. Y. 460 ; *Graves* v. *L. S. & M. S. R. R. Co.*, 137 Mass. 33.) Such a limitation in the bill of lading will protect the carrier even though the loss or injury is the result of negligence. It will be seen from the cases cited that the question is not now an open one in this court. The only remaining question is whether the limitation is expressed in appropriate terms or with such clearness as to bind all the parties interested? If the limitation in this case is not clearly expressed, it is quite obvious that it must have been the fault of the shipper and not of the defendant. The shipper was at liberty to express the terms of the contract in this respect in his own language, and the shipper being the agent or representative of the consignee, to ship the goods in the customary form and with the customary bill of lading, could bind the latter as between him and the carrier so that even if the restriction as to value was not clearly expressed it is difficult to see how either the shipper or the consignee could complain, but there is in fact no ambiguity

or want of clearness in the words of the restriction. The words "Valuation restricted to forty cents per cubic foot" are so plain and clear that no one could fail to mistake their meaning. They obviously meant and were so understood by the shipper to restrict the value to be placed upon the property to a certain sum in case it was lost from any cause for which the defendant was responsible, even though that cause was its own negligence. No one had a clearer notion of the importance of this restriction than the shipper himself who inserted it in the contract. He knew from his own experience as a shipper and from the custom of the business that by inserting the restriction he would procure a material reduction in the compensation of the carrier, and of course knew that he could not obtain that advantage for himself or his consignee without some corresponding benefit to the defendant. It seems to us that the contract was fairly made and conforms to the intention of the parties and should be enforced like other contracts; so the judgment should be modified by reducing the recovery to twenty-nine dollars, which is conceded to be the valuation of the property under the restriction in the bill of lading, and as so modified, should be affirmed, with costs to the defendant in this court.