### GIMBEL BROS., Inc. v. BARRETT.

(District Court, E. D. Pennsylvania. August 10, 1914.)

No. 3140.

COMMERCE (§ 89*)—TRANSPORTATION OF FREIGHT—OVERCHARGE—RECOVERY—JURISDICTION.

    Where a suit against a carrier for overcharges in violation of the Interstate Commerce Acts involved only a construction of the carrier's published rate and its application to the shipments in question, the district court had jurisdiction to determine the controversy without an application having been first made to the Interstate Commerce Commission.

    [Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*]

Action by Gimbel Bros., Incorporated, against William M. Barrett, as president of the Adams Express Company. On motion to dismiss for want of jurisdiction. Denied.

Morton Z. Paul and Wm. A. Glasgow, Jr., both of Philadelphia, Pa., for plaintiff.

John L. Evans and Thomas De Witt Cuyler, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The action in this case is brought under the Interstate Commerce Acts. The motion to dismiss is based upon the proposition that the court is without jurisdiction to entertain the action until the proper rates of charge, which are alleged to have been exceeded, have been first interpreted by the Interstate Commerce Commission. The acts of Congress, after setting forth the requirements of the law and imposing a liability upon carriers who are guilty of the acts declared to be unlawful, provide that any person claiming to be damaged may make complaint to the Commission or bring suit for damages. The impression first received upon the reading of the act

---

is that the tribunal, whose powers may be invoked to redress the injury, is optional with the complainant. This impression is deepened by the further provision that both remedies cannot be pursued, but that the claimant "must elect" which of the two methods of procedure he will adopt, and is further deepened by those provisions of the act which indicate the purpose of Congress to give the remedies allowed in addition to those which pertain at common law. A fuller consideration of the acts, however, soon discloses that certain of their remedial features are made subordinate to the administrative powers conferred, and the remedies afforded do not become effective or cannot be applied except through or until after the exercise of these administrative powers, which are conferred not upon the courts but upon the Commission. This makes necessary that in such cases the appeal of the person injured be made, or at least be first made, to the Commission. This necessity arises, not because of a lack of jurisdiction, strictly speaking, in the courts, but because some facts upon which the judgment of the courts must be based can only be made to appear from the exercise of these administrative powers. To construe the acts as conferring these administrative powers upon the courts would not only work practical confusion, in that the results would vary in different jurisdictions and even in different cases, but such a construction would make the act self-destructive. This is the basis of the ruling in every one of the cases to which we have been referred. For illustration, in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, the carrier there had published its tariff or schedule of charges. The complaint was that these rates were unreasonable, and the right of action was based upon a finding to this effect. To render judgment against the carrier with the schedules in force involved this incongruity. The act required the carrier to file its tariff. It further required it to adhere to it when filed and to strictly observe it as filed. This is its plain meaning. How, then, could it be construed to also mean that the carrier was bound to depart from the published rates? This and the practical difficulties in the way of any other construction of the act compelled the construction that the determination of the proper rate, or what the rate should be, or, in other words, the fixing of the rate, was committed to the Commission and to the Commission alone as an administrative act.

The latest case on the subject to which we have been referred, that of Texas & Pacific Ry. v. American Tie Co., 234 U. S. 138, 34 Sup. Ct. 885, 58 L. Ed. 1255, affords another illustration of the same distinction. There the complaint was the refusal of the railroad to transport ties in pursuance of an alleged purpose to limit their sale market. The objection to any action by the court was that no rates for ties had been filed by the carrier, and, in consequence, no charge could be made for such service. There was a rate for lumber, and the question was whether this applied to ties. The court held this question "was one to be primarily determined by the Commission" in the exercise of the powers conferred upon it by Congress, because the real purpose to be accomplished was an administrative purpose. These cases are in line with the previous cases ruled by the court upon the distinction between a matter being within the power of the Commission to determine ques-

tions affecting it and the wisdom of a ruling made in pursuance of the power.

The question thus ruled to be within the province of the Commission to primarily determine is a different question from that raised by the allegation that a carrier has charged more than or otherwise departed from the published rate. This may involve the meaning of the tariff in order to determine the fact of the alleged departure. To hold that the court cannot determine the fact of whether the published rate or more or less than the published rate has been collected in a given case is to take from the courts the jurisdiction committed to them by Congress. Nor is this result changed by the fact of whether the rate be one which is fixed by an act of Congress, by a tariff or schedule of rates fixed by being filed by the carrier, or by a ruling by the Commission. In any case, the fact of departure from it must be a fact within the province of the court to find, or it can never proceed to render judgment in any case. It only remains to inquire on which side of the line thus drawn by the courts the complaint of the plaintiffs in this case is. Expressed in its simplest form, as set forth in the statement of claim, it alleges these facts:

(1) The defendant filed its schedule of rates which are set forth in the statement.

(2) It has not adhered to these published rates in that it has charged and collected from the plaintiffs sums in excess of the rates as thus filed in the particular respects set forth in the statement.

(3) For a time it made these overcharges on all the shipments made by the plaintiffs, and later it has made the overcharge on particular shipments.

(4) A statement is shown giving the items, dates, and aggregate amount of these overcharges.

If the court cannot determine the questions which on the face of this statement of claim will arise on the trial of this case, it is difficult to conceive of a case arising under the Interstate Commerce Act, which comes within the proper function of the court to determine.

A touchstone to this case is that if application was made in the first instance to the Commission, and they made a ruling as to the proper amount chargeable by the carrier, and an action was then brought for an alleged overcharge, it would be necessary for the court to construe the ruling of the Commission. This is exactly the situation with the respect to the published schedule, a construction of which will also be called for. The two things have precisely the same basis and the same status. A ruling by the Commission and a published schedule of rates each have the force and practical effect of a statute. It is therefore difficult to understand why it is not as much the function of the court to construe the one as the other. This is in no sense an administrative act, nor is it the exercise of a rate making function. It is wholly and solely the act of construing a statute or what is its equivalent in legal effect. These observations, of course, only apply to the present state of the record, which is made by the averments in the complaint. No trial questions inconsistent with this can be anticipated. If they arise, they can be disposed of when and as they arise.

The motion to dismiss is therefore disallowed, and the rule to show cause is discharged.