MERCHANTS ELEVATOR COMPANY v. GREAT NORTHERN RAILWAY COMPANY AND ANOTHER.[1]

December 3, 1920.

No. 21,910.

Carrier — charge for reconsigning shipments of grain.

1. Under the applicable tariffs, defendants were not entitled to exact a reconsignment charge, on shipments of grain, held in cars on track at billed destination for inspection and disposition orders incident to such inspection and after inspection reconsigned to another station.

Interstate commerce.

2. The state courts have jurisdiction to construe a tariff filed with the Interstate Commerce Commission, even though it has not been officially construed by the commission.

Action in the municipal court of Minneapolis to recover $80 over-

[1] Reported in 180 N. W. 105.

charges collected on certain cars of grain. The case was tried before Baldwin, J., who before any testimony was offered and again at the close of the testimony, denied defendant's motion to dismiss for want of jurisdiction, upon plaintiff's counsel's statement to the court, made findings and ordered judgment in favor of plaintiff. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*M. L. Countryman, F. G. Dorety, R. J. Hagman* and *Dille, Hoke, Krause & Faegre,* for appellants.

*Lancaster, Simpson, Junell & Dorsey,* for respondent.

HALLAM, J.

Plaintiff shipped 16 cars of corn over the Great Northern Railway from Omaha, Nebraska, to Willmar, Minnesota. Willmar is an official sampling and inspection point for grain. The cars were billed to Willmar solely for the purpose of inspection and grading and when they arrived at Willmar, they were held on track for that purpose. When plaintiff received the official grade, it reconsigned the cars from Willmar to Anoka. Defendants thereupon exacted a reconsignment charge of $5 per car. Plaintiff contended that this charge was unlawful and brought this suit to recover the amount paid. The court decided for plaintiff and defendants appeal.

Defendants contend that the charge is authorized by Rule 10, which is part of the published tariff known as tariff No. 1240-A. Rule 10 reads as follows:

"Rule 10. DIVERSION OR RECONSIGNMENT TO POINTS OUTSIDE SWITCHING LIMITS BEFORE PLACEMENT: If a car is diverted, reconsigned or reforwarded on orders placed with local freight agent or other designated officer after arrival of car at original destination, but before placement for unloading, or if the original destination is served by a terminal yard, then after arrival at such terminal yard, a charge of $5.00 per car will be made if car is diverted, reconsigned or reforwarded to a point outside of switching limits of original destination."

Plaintiff contends that the case is within the exception known as exception (a) as amended by Supplement No. 1. This exception provided that these rules (including Rule 10) shall not apply to:

"(a) Grain, seed (field), seed (grass), hay or straw, carloads, held in cars on track for inspection and disposition orders incident thereto at billed destination or at point intermediate thereto."

The cars in controversy were "reconsigned" on orders placed at Willmar after the arrival of the car at that point, and Rule 10 authorized the charge of $5 per car which was exacted by defendant unless the case is brought within the exception above quoted. The whole issue, therefore, is as to the meaning of the language of the exception. We think the case is within the exception. We construe the exception to mean that cars of grain are exempted from Rule 10, if held on track at billed destination for inspection and for disposition orders incident to such inspection, and that the "disposition order" may be an order to make disposition by way of reconsignment to another destination. This seems to us the fair meaning of the language. The purpose doubtless is to permit inspection of grain at inspection points for the purpose of determining the ultimate market, and then to dispose of the shipment by reconsignment to such market without extra charge.

It follows that the exaction of the $5 reconsignment charge was improper.

2. Defendants contend that the courts of this state have no jurisdiction to construe a tariff filed with the Interstate Commerce Commission in advance of its construction by the Interstate Commerce Commission. This question was determined adversely to defendants' contention in Reliance Elev. Co. v. Chicago, M. & St. P. Ry. Co. 139 Minn. 69, 165 N. W. 867. Nothing has occurred since that time to change the situation. We find no occasion to overrule our former decision.

Order affirmed.